**Charlie TAYLOR, Plaintiff–Appellant,**

**v.**

**Carl G. GREEN, Jimmy L. Alford, and B.L. Cathey, Defendants–Appellees.**

**No. 87–2537**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

March 22, 1989.

---

Charlie Taylor, Tennessee Colony, Tex., for plaintiff-appellant.

Jo Anne Bernal, Asst. Atty. Gen., Jim Mattox, Atty Gen., Austin, Tex., for defendants-appellees.

Before RUBIN, GARWOOD, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

After a jury trial, a Texas state prisoner who sought damages from various prison officials for a beating suffered at the hands of other inmates was awarded punitive but no compensatory damages. He seeks an award of compensatory damages in a substantial amount and an increase in the amount of punitive damages. Finding no reason to overturn the jury verdict, we affirm the judgment but award him $1 in nominal damages.

Charlie Taylor, an inmate of the Texas Department of Corrections, filed this § 1983 action against six TDC employees, Coffield Unit Warden Jack Garner, Assistant Warden Jimmy Alford, Capt. Carl Green, Lt. B.L. Cathey, Sam Merrell, and Assistant Warden Leslie Woods, alleging that on July 10, 1984, the defendants violated his rights by causing three Support Service Inmates (SSI's) to attack and injure him seriously. At the pretrial hearing, Taylor added a claim of denial of adequate medical treatment. After the pretrial hearing, the court held Taylor's claims against Garner and Woods in abeyance. It severed the claim against Merrell. Taylor's counsel did not mention the adequacy of medical treatment in his opening statement and, after trial, the court dismissed this claim as not proved. It also dismissed the claims against Garner, Woods, and Merrell, leaving only Alford, Cathey, and Green as defendants.

The jury rendered a verdict against Alford, Cathey, and Green, but assessed Taylor's "actual damages" as "None." The jury awarded him punitive damages of $200 from each of these defendants, none of whom has appealed. By implication, the court denied Taylor's motion for a new trial.

Taylor asserts on appeal that he is entitled to $6.9 million as compensatory damages for his bodily injuries and $50,000 from each defendant as punitive damages. He contends that he suffered eye and head injuries from being hit with a "steel weapon," resulting in partial loss of vision. In support, Taylor argues that his polygraph examination shows that his version of the

attack is true. Taylor also asserts that an SSI told the monitor who is assisting the Special Master appointed pursuant to *Ruiz v. Estelle*[1] that he and other inmates had received special privileges for beating other inmates upon orders of some of the defendant prison officers, whom he does not personally identify.

While Taylor testified that Lt. Green shoved him into eight SSI's who beat him "real bad" for six or seven minutes, Green testified that he did not see anyone touch Taylor.

Warden Garner testified that under the *Ruiz* decree, an officer should have been present with the SSI's in the office where they had the altercation with Taylor. Garner testified further, however, that a TDC internal investigation rejected Taylor's accusations and exonerated Alford, Cathey, Green, and Christensen.

Cathey testified that, when he and other officers heard sounds that suggested fighting in Major Alford's office, they immediately opened the door and broke up the fight between Taylor and inmates Dietzman, Griest, and Aguilar. This account was supported by the testimony of Green and Major Alford. Green added that Griest complained to him that Taylor had said something about his, Griest's, mother. Alford denied that he instigated the alleged attacks on Taylor and inmate Pearson, and he denied having seen or heard anyone else do so.

■ If Taylor had proved that any of the defendants had induced the SSI's to attack him, he would be entitled to compensatory damages even if his injuries were no more severe than those shown by the medical report and Dr. Cox's testimony. His own testimony, however, sufficed only to establish a prima facie case. Any probative

value of his polygraph examination is diminished by a notation that "certain physiological conditions present in Inmate TAYLOR caused an unusual cardio pattern on the graphs, which could possibl[y] [a]ffect the reliability of the test." There is ample evidence in the record to support a finding that none of the defendants was blameworthy except for negligently leaving Taylor alone with the SSI's for a few minutes. The district court, therefore, did not abuse its discretion in denying Taylor's motion for a new trial because the jury's failure to award compensatory damages does not lack "factual support in the record."[2] We therefore affirm the district court's refusal to grant a new trial.

■ The Seventh Amendment to the Constitution not only preserves the right to trial by jury but assures that "no fact tried by a jury[ ] shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." The jury determines the quantum of damages in civil cases.[3] Unless an award is so " 'inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate.' "[4]

The court manifestly lacked power to add to the amount of the verdict for either compensatory or punitive damages. In *Dimick v. Schiedt*,[5] the Supreme Court held that a district court lacked power to condition its denial of a plaintiff's motion for a new trial upon the defendant's consent to increase the quantum of damages to $1,500, because the Constitution forbids a trial court to add to a jury's verdict.

Where the verdict returned by a jury is palpably and grossly inadequate or ex-

---

**1.** 503 F.Supp 1265 (S.D.Tex.1980), *aff'd in part and rev'd in part on other grounds*, 679 F.2d 1115 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

**2.** *C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1052 (5th Cir.), *cert. denied*, 454 U.S. 1125, 102 S.Ct. 974, 71 L.Ed.2d 112 (1981).

**3.** *Murphy v. City of Flagler Beach*, 846 F.2d 1306, 1310 (11th Cir.1988); *Hawkes v. Ayers*, 537 F.2d 836, 837 (5th Cir.1976).

**4.** *Garrick v. City and County of Denver*, 652 F.2d 969, 972 (10th Cir.1981) (quoting *Barnes v. Smith*, 305 F.2d 226, 228 (10th Cir.1962) ). *See also Verdin v. C & B Boat Co., Inc.*, 860 F.2d 150, 156–57 (5th Cir.1988).

**5.** 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935).

cessive, it should not be permitted to stand; but, in that event, both parties remain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages. Both are questions of fact.... [W]here the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict.[6] Therefore, we reject Taylor's argument for an additur.

 The verdict indicates that the jurors found that Alford, Green, and Cathey had violated Taylor's constitutional rights. In such a situation an injured party is entitled to nominal damages.[7] Although neither the district court nor this court has the power to add to the jury's verdict, when the amount of damages is not disputed and a party is entitled to damages under the verdict as a matter of law, we may award that undisputed amount.[8] As explained in Moore's Federal Practice, "It would be a mere formality to order a partial new trial limited to the issue of damages when the court could immediately thereafter grant summary judgment for the undisputed amount."[9] Thus, in *Archie v. Christian*,[10] we awarded nominal damages of $1.00 when the plaintiff had shown that his constitutional rights had been violated, even though he had not proved his right to actual damages.[11] Therefore, as appellees request, we modify the judgment to provide an award of one dollar in nominal damages against Alford, Green, and Cathey.[12]

 In a supplemental brief filed February 1, 1988, Taylor requests that the trial judge, Judge Robert Parker, former TDC Director McCotter, a deputy clerk, two Texas assistant attorneys, two Texas assistant attorneys general, two of his former attorneys, and the SSI's involved in the fighting incident be found in contempt. He asserts that the SSI's committed aggravated assault and that the others "distort[ed] justice." We do not entertain claims asserted for the first time on appeal.

Also on February 1, 1988, Taylor filed a request that this court order him transferred out of TDC custody. He alleges that his "safety will be in danger due to the outcome of this suit." Even if as an appellate court we have authority to hear such a claim asserted for the first time on appeal, we see no reason why the result we reach is likely to provoke TDC personnel.

For these reasons, we modify the judgment to award $1 in nominal damages in favor of Taylor and against Alford, Green, and Cathey, jointly and severally. In all other respects, we affirm the judgment.

---

6. 55 S.Ct. at 301; *see also Hawkes*, 537 F.2d at 837.

7. *Cowans v. Wyrick*, 862 F.2d 697 (8th Cir.1988).

8. *Hawkes*, 537 F.2d at 836–837.

9. 6A J. Moore's Federal Practice ¶ 59.08[8] (2d ed. 1987).

10. 812 F.2d 250, 252 (5th Cir.1987).

11. *See also Farrar v. Cain*, 756 F.2d 1148 (5th Cir.1985).

12. *Archie*, 812 F.2d at 252, 253.