**AMF TUBOSCOPE, INC., and American Machine & Foundry Co., Appellants,**

v.

**Joe H. CUNNINGHAM and Arrow Pipe Service, Inc., Appellees.**

**No. 7836.**

United States Court of Appeals
Tenth Circuit.

Oct. 6, 1965.

Tom Arnold and Frank S. Vaden III, Houston, Tex., (Arnold & Roylance, Houston, Tex., Robert M. Rainey and Rainey, Flynn & Welch, Oklahoma City, Okl., of counsel, on the brief), for appellants.

Jerry J. Dunlap, Oklahoma City, Okl., (W. Samuel Dykeman, Morgan, Dykeman & Williamson and Dunlap & Laney, Oklahoma City, Okl., of counsel, on the brief), for appellees.

Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a patent infringement suit, originally brought by Tuboscope Company,[1] a Delaware Corporation, against Joe H. Cunningham and Arrow Pipe Service, Inc.[2] The plaintiff below alleged that the defendants had infringed each of three patents owned by Tuboscope, directly and contributorily, and had induced infringement of such patents by others, and that defendants intended to continue so to infringe and induce infringement, unless enjoined from so doing. The plaintiff prayed for an injunction against further infringements and inducements to infringe and for "an accounting of damages for said infringements and inducements and an award of treble damages."

In their answer the defendants denied the validity of the patents, on the ground, among others, that the respective inventions were "in public use or on sale in this country * * * more than one year prior" to the date of the respective applications for such patents, and denied infringement of any of the patents. They also set up a counterclaim for a declaratory judgment, adjudging that the patents in suit were invalid and that the defendants had the right to make and use the types of electromagnetic pipe inspection devices being used by Arrow Pipe Service without interference by Tuboscope; and also prayed for damages caused by alleged falsely published and circulated letters and oral statements to the trade that the defendants were infringing the patents in suit. On December 21, 1962, Tuboscope filed a reply to the counterclaim, in which it denied the

1. Hereinafter called Tuboscope.

2. Hereinafter called defendants.

allegations thereof, other than that it was a suit for declaratory judgment.

Tuboscope did not, either within 10 days after the answer was filed or within 10 days after its reply was filed, demand a trial by jury by serving upon the defendants a demand therefor in writing in the manner prescribed by Rule 38(b) of the Federal Rules of Civil Procedure, or otherwise.

On December 30, 1963, an amended complaint was filed in which AMF Tuboscope, Inc.,[3] a Texas corporation, was substituted as a party plaintiff for Tuboscope, and in which American Machine & Foundry Co.[4] was joined as a party plaintiff. In the amended complaint, it was alleged that at all times pertinent, prior to October 8, 1963, Texas Tuboscope was the owner of all rights, title and interest in the three patents in suit; that on such date A.M. & F. Co. became and thereafter continued to be the owner of all right, title and interest in each of such patents, and that on such date Texas Tuboscope became and thereafter continued to be exclusively licensed under such patents by A.M. & F. Co.; and it was further alleged that because of the alleged acts of infringement, commenced on September 19, 1960, and occurring since such date, plaintiffs had been damaged "in the vicinity of" $86,000. In other respects the allegations of the two complaints were substantially the same.

In the amended complaint Texas Tuboscope and A. M. & F. Co. prayed that each of the patents be declared valid and infringed; that they be awarded their actual damages, compounded by three, because of the wilful and deliberate quality and character of the actual infringement, and that the defendants be enjoined from further direct and contributory infringement and from inducing infringement by others.

On January 9, 1964, defendants filed their amended answer to the first amended complaint, setting up substantially the same defenses and counterclaim as they set up in the original answer, including the defense of prior public use. Texas Tuboscope and A. M. & F. Co. filed their reply to the amended answer and counterclaim on January 20, 1964.

On December 23, 1963, Texas Tuboscope and A. M. & F. Co. filed a written demand for a trial by jury of all the issues in the case.

On January 2, 1964, counsel for the parties plaintiffs and defendants addressed and delivered to the Chief Judge of the District Court a joint letter in which they stated:

"The parties having agreed to the filing of Plaintiffs' First Amended Complaint, thereby making Case No. 9892 hereinafter styled as shown above, and, the parties having agreed to trying this lawsuit to a jury and having it scheduled on the court's next jury docket, the parties hereby request that this case be scheduled for trial during the week commencing Monday, January 20, 1964, which we understand would be the second week of the court's proposed jury docket for January, 1964."

Prior to February 28, 1964, the Chief Judge of the District Court entered an order for a jury trial of the case and set it for trial on March 2, 1964, the first day of the next jury docket. He thereby impliedly approved the stipulation of the parties agreeing to and requesting a trial of the issues by jury.

On February 28, 1964, the Chief Judge conducted a second pretrial conference in the case. At such conference, of his own motion, he raised the question of whether the case was one for trial to a jury. He expressed the view that it would be a difficult case to try to a jury, indicated great reluctance to try the case to a jury, stated he would be "willing to take the responsibility of holding that it's not a jury case"; that he was "inclined to deny a jury trial * * * and set aside my order allowing a jury" and that he could "stop the jurors" called to report Monday morning, March 2, 1964.

3. Hereinafter called Texas Tuboscope.

4. Hereinafter called A.M. & F. Co.

Acting *sua sponte*, the Chief Judge held that the amended complaint did not give the plaintiffs a new right to demand a jury trial and stated, "I first hold that it's not a jury case in the first instance, as a matter of law" and "in the second instance" that the request for a jury trial was not timely and the matter of a jury trial was within his discretion. He further stated that on those two grounds a jury trial was denied.

The case proceeded to trial before the court without a jury. The court found the claims of the patents in suit were invalid and not infringed and that the plaintiffs were "estopped from enforcing the patents in suit against the defendants."

▉▉ We hold that under the original complaint, the answer thereto, and the reply to such answer, Tuboscope was entitled as of right to a jury trial of the issues of fact respecting validity and infringement of the patents in suit and of damages, and we hold that under the amended complaint, the answer thereto, and the reply to such answer, Texas Tuboscope and A. M. & F. Co. were entitled as of right to a jury trial of the issues of fact respecting validity, infringement, and damages, unless that right was waived, by the failure of Tuboscope to make a timely demand for a trial by jury of such issues raised by the original pleadings.

Both the original and the amended complaint sought the recovery of damages. While the original complaint was couched in terms of an accounting for damages, no basis for an equitable accounting was alleged. What was said in Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477, 478, 82 S.Ct. 894, 900, 901, 8 L.Ed.2d 44 is apposite:

"The respondents' contention that this money claim is 'purely equitable' is based primarily upon the fact that their complaint is cast in terms of an 'accounting,' rather than in terms of an action for 'debt' or 'damages.'

But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings. The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, \* \* \* the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them. In view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met."

Prior to the adoption of the Federal Rules of Civil Procedure in 1938, a claim properly cognizable only at law could not be united in the same pleading with a claim for equitable relief.[5]

By Rule 18(a) of the Federal Rules of Civil Procedure a plaintiff "may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party"; and under Rule 18 (b) "Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; \* \* \*." The Federal Rules did not, however, purport to change the basic holding of Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358, that the right to trial by jury of legal claims must be preserved, and Rule 38(a) of such Federal Rules expressly reaffirms that constitutional principle by declaring "The right of trial by jury as declared by the Sev-

---

5. Scott v. Neely, 140 U.S. 106, 117, 11 S.Ct. 712, 35 L.Ed. 358; Cates v. Allen, 149 U.S. 451, 13 S.Ct. 883, 37 L.Ed. 804.

enth Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."[6] And in Beacon Theatres v. Westover, 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988, the court held that the right of trial by jury in the Federal courts cannot be dispensed with, except by the assent of the parties entitled to it and cannot be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief.[7]

The court, in Beacon Theatres v. Westover, supra, at page 510, 79 S.Ct. at page 956, said:

"If there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. Since the right to jury trial is a constitutional one, however, while no similar requirement protects trials by the court, that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial. * * *"

And in Dairy Queen, Inc. v. Wood, supra, 369 U.S. at pages 472 and 473, 82 S.Ct. at page 897, the court said:

"* * * The holding in Beacon Theatres was that where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.' * * *"

In Dairy Queen, Inc. v. Wood, supra, the owners of the trademark "Dairy Queen" had entered into a contract with Dairy Queen, Inc., under which Dairy Queen, Inc., agreed to pay a stipulated sum for the exclusive right to use the trademark in certain portions of Pennsylvania. The action was brought by such owners against Dairy Queen, Inc. It filed an answer raising a number of defenses and made a timely demand for a trial by jury. The Federal District Court struck Dairy Queen, Inc.'s demand for a trial by jury on the alternative grounds that either the action was "purely equitable" or that whatever legal issues were raised were "incidental" to equitable issues. The Supreme Court, after holding the complaint was subject to the construction that it was one for the recovery of damages for breach of contract, damages for trademark infringement, or a combination of the two, concluded the case was not one for an accounting in equity, saying:

"* * * A jury, under proper instructions from the court, could readily determine the recovery, if any, to be had here, whether the theory finally settled upon is that of breach of contract, that of trademark infringement, or any combination of the two. The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records."

The Supreme Court further specifically held that Dairy Queen, Inc., was entitled to a trial by jury of the issues of trademark infringement and damages.

Following Beacon Theatres v. Westover, supra, in Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 5 Cir., 294 F.2d 486, where a manufacturer and its customers sued to restrain a patent holder from interfering with the manufacturer's business relations and from harassing it or its customers by threats of suit, and for a declaratory judgment that the three patents involved were invalid and not infringed, and the owner of the patents counterclaimed for patent in-

6. Dairy Queen, Inc. v. Wood, supra, 369 U.S. 471, 472, 82 S.Ct. 894, 897.

7. Dairy Queen, Inc. v. Wood, supra, 472, 473, 82 S.Ct. 894.

fringement and demanded a jury trial of the issues of fact raised by the counterclaim, the court, in a well reasoned opinion by Judge Wisdom, held that the patent holder was entitled to a jury trial of the issues of the validity and infringement of the patents. In the opinion the court said:

"It is therefore immaterial that the case at bar contains a stronger basis for equitable relief than was present in Beacon Theatres. It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control. This is the teaching of Beacon Theatres, as we construe it.

"On the record, there is no showing that the plaintiffs would suffer irreparable injury or that they have no adequate remedy at law. In the absence of these imperative prerequisites, we are compelled to hold that the district court abused its discretion in ordering an immediate and separate trial without a jury of the issues of the validity and infringement of the defendant's patents."

Following the decision in Dairy Queen, Inc. v. Wood, supra, the Fifth Circuit in Swofford v. B & W, Incorporated, 336 F.2d 406, c. d. 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557, in an action for patent infringement and in accounting of profits to ascertain damages and a temporary and permanent injunction against continued infringement, again held that the plaintiff was entitled to a jury trial on the issues of validity, infringement, and damages. We think the two Fifth Circuit cases clearly support the conclusion we have reached.

■ Two questions remain. Was it within the discretion of the trial court to deny a jury trial, and, if so, was that discretion soundly exercised? The constitutional right to a jury trial under the Seventh Amendment is a fundamental right and "[t]he federal policy favoring jury trials is of historic and continuing strength."[8] The court in exercising its discretion under Rule 39(b) of the Federal Rules of Civil Procedure "should grant a jury trial in the absence of strong and compelling reasons to the contrary."[9]

■ Here, both parties, by stipulation, had agreed to and requested a jury trial. The Chief Judge had approved that stipulation, entered his order for a jury trial, and set the case for trial on the jury docket. On February 28, 1964, on the eve of trial to a jury, the court of its own motion vacated its order and the setting of the case on the jury docket and denied a jury trial on the issues of validity, infringement, and damages, and set the case for trial on March 2, 1964, as a nonjury case.

The orderly business of the court would not have been disturbed by a jury trial. The case had been set for trial before a jury on March 2, 1964. A jury panel had been summoned for that date. No good reason for denying a jury trial was apparent and it is obvious that the primary reasons the Chief Judge denied a jury trial were his conclusion that the parties were not entitled to a jury trial as of right, and his known reluctance to try a case to a jury.

We are of the opinion that the Chief Judge abused his discretion, if discretion he had under the existing circumstances, in denying a jury trial.

The judgment is reversed and the cause remanded, with instructions to the court to grant a trial by jury on the issues of validity, infringement, and damages.

8. Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691.

9. Swofford v. B & W, Incorporated, 5 Cir., 336 F.2d 406, 409, c. d. 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557.